U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF LOUISIANA

2011 SEP 20  AM 11: 16

LORETTA G. WHYTE
CLERK

| | |
|---|---|
| Dorothy Arndt, individually, and on behalf of all others similarly situated, [ADDITIONAL PLAINTIFFS LISTED ON SCHEDULE OF PLAINTIFFS, ATTACHED HERETO AS EXHIBIT "A"], | CASE NO.: SECT. L MAG 2 |
| Plaintiffs, | CLASS ACTION COMPLAINT |
| v. | 11 - 2349 |
| | SECT. L  MAG. 2 |
| GEBRUEDER KNAUF VERWALTUNGSGESELLSCHAFT, KG; KNAUF INTERNATIONAL GmbH; KNAUF INSULATION GmbH; KNAUF UK GMBH; KNAUF AMF GMBH & CO. KG; KNAUF DO BRASIL LTD.; PT KNAUF GYPSUM INDONESIA; KNAUF GIPS KG; KNAUF PLASTERBOARD (TIANJIN) CO., LTD.; KNAUF PLASTERBOARD (WUHU), CO., LTD.; GUANGDONG KNAUF NEW BUILDING MATERIAL PRODUCTS CO., LTD.;[ADDITIONAL DEFENDANTS LISTED ON SCHEDULE OF DEFENDANTS, ATTACHED HERETO AS EXHIBIT "B"], | JURY TRIAL DEMAND |
| Defendants. | |

_____/

### PLAINTIFFS' OMNIBUS CLASS ACTION COMPLAINT (XII)

Pursuant to Fed. R. Civ. P. 23, the class representatives in this action bring suit on behalf of themselves and all other similarly situated owners and residents of real property containing defective Chinese manufactured drywall that was designed, manufactured, imported, distributed, delivered, supplied, marketed, inspected, installed, or sold by the Defendants. In order to accomplish an effective class structure, each of the class representatives is pursuing a nationwide

350

class action against the Knauf entities,[1] who are the manufacturers of the drywall located in plaintiffs' homes.  Subordinate to this national class action, the identified class representatives are participating in subclasses asserting claims against each of their distributors, suppliers, importers, exporters, brokers, builders, developers, contractors and installers for whom they have standing as specifically set forth in Exhibit "A" (class and subclass members shall be collectively referred to herein as "Class Members").  Each of the Defendants in this action are liable for damages incurred by Plaintiffs due to their role in the design, manufacture, importing, distributing, delivery, supply, marketing, inspecting, installing, or sale of the problematic drywall at issue in this litigation.

### JURISDICTION, PARTIES, AND VENUE

1.   Original jurisdiction of this Court exists by virtue of 28 U.S.C. §1332(d)(2) and the Class Action Fairness Act ("CAFA").  *See* 28 U.S.C. § 1711, *et. seq.*  The Plaintiffs and certain of the Defendants in these actions are citizens of different states and the amounts in controversy in these actions exceed five million dollars ($5,000,000.00), exclusive of interest and costs.

2.   For each subclass, the Court has original jurisdiction under CAFA and/or supplemental jurisdiction under 28 U.S.C. § 1367.

3.   Venue in this district satisfies the requirements of 28 U.S.C. §1391(b)(1)-(2) and (c) because Plaintiffs and a significant number of the absent class members reside in this jurisdiction

---

[1] Knauf consists of Gebrueder Knauf Verwaltungsgesellschaft, KG ("GKV"); Knauf International GmbH ("Knauf International"); Knauf Insulation GmbH ("Knauf Insulation"); Knauf UK GMBH ("Knauf UK"); Knauf AMF GmbH & Co. KG ("Knauf AMF"); Knauf do Brasil Ltd. ("Knauf Brasil"); PT Knauf Gypsum Indonesia ("Knauf Indonesia"); Knauf GIPS KG ("Knauf Gips"); Knauf Plasterboard (Tianjin) Co., Ltd. ("Knauf Tianjin"); Knauf Plasterboard (Wuhu), Co., Ltd. ("Knauf Wuhu"); and Guangdong Knauf New Building Material Products Co., Ltd. ("Guangdong Knauf")(collectively "Knauf").

2

and a substantial amount of the events and occurrences giving rise to these claims occurred in

this District, or a substantial part of the property that is the subject of this action is situated in this

district. Venue is otherwise appropriate in this district consistent with 28 U.S.C. § 1407 and the

June 15, 2009 Transfer Order of the Judicial Panel on Multidistrict Litigation ("JPML"). *See In*

*re: Chinese-Manufactured Drywall Products Liability Litigation*, 626 F.Supp.2d 1346 (J.P.M.L.

Jun. 15, 2009).

## PLAINTIFFS

4.  For purposes of clarity, the Plaintiffs are asserting claims on behalf of all owners and

residents of the subject properties, including but not limited to, minors and other residents of the

properties who do not appear herein as named plaintiffs.

5.  To the extent some of the Plaintiffs are already class representatives in *Payton, et al. v.*

*Knauf Gips KG, et al.*, Case No.09-7628 (E.D.La.), *Rogers, et al. v. Knauf GIPS KG, et. al.*, Case

No. 2:10-cv-00362 (E.D.La.), *Abreu, et. al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et.*

*al.*, Case No. 2:11-cv-00252 (E.D.La.), and/or Block, et. al. v. Gebrueder Knauf

Verwaltungsgesellschaft, KG, et. al., Case No. 11-cv-1363 (E.D.La.), they are not participating in

the instant complaint as class representatives in the class asserted against Knauf. Such Plaintiffs

are participating as class representatives in the instant complaint for non-manufacturing

defendants in the chain of distribution for the defective drywall in their homes or other structures.

6.  Unless specifically stated to the contrary on Exhibit "A", all Plaintiffs are citizens of

the state where they reside and all entities are citizens of the state where they are organized. For

those entities, where the state of organization is not listed, it is asserted upon information and

belief that the entity is incorporated and/or organized in the state of its principal place of

3

business.

7. Plaintiffs are participating as class representatives in the class and subclass as set forth on Exhibit "A".

8. Each of the plaintiffs are identified on Exhibit "A", which is incorporated herein by reference. Each plaintiff identified on Exhibit "A" is bringing claims against the manufacturing defendants as set forth in Paragraphs 10-22 of this Complaint and any distributor, supplier, importer, exporter, broker, builder, developer, contractor or installer identified in Exhibit "A" by the number corresponding to that defendant on Exhibit "B". Exhibit "B" is incorporated herein by reference. Counsel for each plaintiff are also identified in Exhibits "A" and "C" hereto.

## DEFENDANTS

9. Unless specifically stated to the contrary, all individual defendants are citizens of the state where they do business and all entities are citizens of the state where they are organized. For those entities, where the state of organization is not listed, it is asserted upon information and belief that the entity is incorporated and/or organized in the state of its principal place of business.

10. Defendant GKV is a foreign corporation doing business in several states including but not limited to Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. GKV is an investment holding company owned by members of the Knauf family including Alfons Frederick Knauf, Karl Rudolf Thies, Alfons Jean Knauf, Christine Brigitte Knauf, Karl Heinrich Knauf, Angelika Werhan, Beatrix Knauf, Carlo Knauf, Christiane Knauf, Alexander Heinrich Knauf, Isabel Corinna Knauf, Mathias Knauf, Karl Konstantin Knauf, Phillippe Knauf, Rupert Knauf, Dr. Albrecht Knauf, Beteiligungs GmbH & Company KGI, Lothar Knauf,

Nikolaus Knauf, and Baldwin Knauf.  GKV is the parent corporation of Defendant Knauf International.

11.  Defendant Knauf International is foreign corporation doing business in several states including but not limited to Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Knauf International is a holding company for GKV and the Knauf Group.  It is closely related to Knauf Gips.  Knauf International is the parent corporation of Defendants Knauf Tianjin, Knauf Wuhu, and Guangdong Knauf.

12.  Defendant Knauf Insulation (referred to in MDL 2047 as Knauf Insulation USA and/or Knauf USA) is a foreign corporation with a principal place of business in Shelbyville, Indiana.  Upon information and belief, Knauf Insulation is a subsidiary of GKV.  Knauf Insulation acted as an agent for Knauf GIPS KG and the Knauf Group lending assistance and participating in the promotion, distribution, marketing, and sale of the drywall at issue in this litigation to American suppliers.  Accordingly, Knauf Insulation was responsible for the drywall at issue in the case being imported, distributed, delivered, supplied, inspected, marketed and/or sold.  This conduct by Knauf Insulation has resulted in harm and damages to Plaintiffs.

13.  Defendant Knauf UK is a foreign corporation doing business in several states including but not limited to Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Knauf UK is involved in the insulation and building material industry.  It is associated with GKV, Knauf Gips and the Knauf Group.  Knauf UK has participated in the activities and sales of the Knauf Group's drywall manufactured in China and sold in the United States.

14.  Defendant Knauf AMF is foreign corporation doing business in several states

including but not limited to Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Knauf AMF is involved in the insulation and building material industry. It is associated with GKV, Knauf Gips and the Knauf Group. Knauf AMF has participated in the activities and sales of the Knauf Group's drywall manufactured in China and sold in the United States.

15. Defendant Knauf Brasil is foreign corporation doing business in several states including but not limited to Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Knauf Brasil is involved in the insulation and building material industry. It is associated with GKV, Knauf Gips and the Knauf Group. Knauf Brasil has participated in the activities and sales of the Knauf Group's drywall manufactured in China and sold in the United States.

16. Defendant Knauf Indonesia is foreign corporation doing business in several states including but not limited to Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Knauf Indonesia is involved in the insulation and building material industry. It is associated with GKV, Knauf Gips and the Knauf Group. Knauf Indonesia has participated in the activities and sales of the Knauf Group's drywall manufactured in China and sold in the United States.

17. Defendant Knauf Gips is a German corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Knauf Gips is a leading manufacturer of building materials and systems. Knauf Gips, together with its Knauf Group affiliates, including Knauf Tianjin, Knauf Wuhu, and Guangdong Knauf, provides building materials and systems to customers in over 50 countries,

6

including the United States. Upon information and belief, at all times material hereto, Knauf Gips supervised, operated, trained and otherwise exercised control and/or had the right to control the operations of Knauf International, Knauf Insulation, Knauf UK, Knauf Tianjin, Knauf Wuhu, and Guangdong Knauf, and its agents, apparent agents, and employees.

18. Upon information and belief, Knauf Gips, together with its affiliates and/or actual or apparent agents, including Knauf International, GKV, Knauf Insulation, Knauf UK, Knauf Tianjin, Knauf Wuhu, and Guangdong Knauf, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Upon information and belief, Knauf Gips and/or GKV, Knauf International, Knauf Insulation, Knauf UK, Knauf Tianjin, Knauf Wuhu, and Guangdong Knauf have continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Knauf Gips and/or GKV, Knauf International, Knauf Insulation, Knauf UK, Knauf Tianjin, Knauf Wuhu, and Guangdong Knauf manufactured and sold, directly and indirectly, to certain suppliers in the United States. Knauf Gips directly controlled through its global family of businesses the importation of problematic Chinese drywall at all times and provided oversight of internal investigations of sales of problematic Chinese drywall.

19. Defendant Knauf Tianjin is a foreign corporation doing business in several States, including but not limited to Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Knauf Tianjin is involved in the manufacturing and sale of gypsum drywall.

7

Knauf Tianjin is the actual agent and/or apparent agent of GKV, Knauf Gips and Knauf International. Upon information and belief, Knauf Tianjin, individually and/or together with and at the direction and control of its principal, Knauf Gips, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers throughout the United States. Knauf Tianjin and/or the Knauf Group have continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Knauf Tianjin and/or the Knauf Group manufactured and sold, directly and indirectly, to certain suppliers in the United States. Representatives of Knauf Tianjin have intentionally directed communications to distributors in the United States, employed American distributors as agents for the company, shipped product intending for it to be distributed in the United States and otherwise engaged in commerce and/or circumstances that the company reasonably expected that it could be hailed into United States Courts.

20. Defendant Knauf Wuhu is a foreign corporation doing business in several States, including but not limited to Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Knauf Wuhu is involved in the manufacturing and/or sale of gypsum drywall. Knauf Wuhu is the actual agent and/or apparent agent of GKV, Knauf Gips and Knauf International. Upon information and belief, Knauf Wuhu manufactured, sold, distributed, marketed or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers throughout the United States. Upon information and belief, Knauf Wuhu and the Knauf Group have continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is

8

installed in numerous structures in the United States.  Knauf Wuhu and/or the Knauf Group manufactured and sold drywall, directly and indirectly, to certain suppliers in the United States. Representatives of Knauf Wuhu have intentionally directed communications to distributors in the United States, employed American distributors as agents for the company, shipped product intending for it to be distributed in the United States and otherwise engaged in commerce and/or circumstances that the company reasonably expected that it could be hailed into United States Courts.

21.  Defendant Guangdong Knauf is a foreign corporation doing business in several States, including but not limited to Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Guangdong Knauf is involved in the manufacturing and/or sale of gypsum drywall.  Guangdong Knauf is the actual agent and/or apparent agent of GKV, Knauf Gips and Knauf International.  Upon information and belief, Guangdong Knauf manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers throughout the United States.  Guangdong Knauf and/or the Knauf Group have continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.  Guangdong Knauf and/or the Knauf Group manufactured and sold drywall, directly and indirectly, to certain suppliers in the United States. Representatives of Guangdong Knauf have intentionally directed communications to distributors in the United States, employed American distributors as agents for the company, shipped product intending for it to be distributed in the United States and otherwise engaged in commerce and/or circumstances that the company reasonably expected that it could be hailed into United States

Courts.

22.  In 1995, the Knauf Group introduced its advanced production techniques and
technology into China through Knauf Gips.  From 1997 through 2001, Knauf Gips serviced the
investments of Knauf International GmbH in China and established three plasterboard plants
which are located in Wuhu, Tianjin and Dongguan.  The product quality of all Knauf
International's plants in China, including Knauf Tianjin, Knauf Wuhu, and Guangdong Knauf,
are strictly controlled according to the requirements of Knauf Gips' headquarters in Germany.
Knauf Gips' sales and technical support teams support Knauf International's businesses
throughout the world, including Knauf Tianjin, Knauf Wuhu, and Guangdong Knauf in China.
Knauf Tianjin, Knauf Wuhu, and Guangdong Knauf and their employees are controlled by and
the actual and/or apparent agents of GKV, Knauf Gips, Knauf UK and/or Knauf International, as
the Knauf Group acts without regard to corporate formalities.

23.  The remaining defendants are identified on Exhibit "B" by name, type of business
(i.e., builder, supplier), principal place of business, state of incorporation and address.  Each
defendant on Exhibit "B" is assigned a number, which number is used to associate that defendant
with the plaintiffs bringing claims against it.

## FACTS REGARDING PROBLEMATIC DRYWALL

24.  Defendants' drywall is predominately composed of gypsum.

25.  In "problematic drywall" (such as that designed, manufactured, exported, imported,
distributed, delivered, supplied, inspected, installed, marketed, and/or sold by Defendants
herein), sulfur compounds exit the drywall.

26.  The sulfur compounds, including Hydrogen Sulfide, Carbonyl Sulfide, and Carbon

Disulfide, exit Defendants' drywall and cause rapid sulfidation and damage to personal property (such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).

27. Exposure to the sulfur compounds that exit Defendants' drywall, causes personal injury resulting in eye problems, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm.

28. Although the drywall functions according to its intended purpose as a building component, it is unfit for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased Knauf drywall and/or their homes had the side effects been disclosed by Defendants.

29. As a direct and proximate result of Defendants' actions and omissions, Plaintiffs' and the Class Members' structures, personal property, and bodies have been exposed to Defendants' problematic drywall and the harmful effects of the sulfur compounds that exit from Defendants' problematic drywall.

30. Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the problematic drywall, which was unfit for its intended purpose and unreasonably dangerous in its normal use in that the drywall caused rapid sulfidation and damage to personal property in Plaintiffs' and Class Members' homes, residences or structures and/or caused personal injury resulting in eye problems, a sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm.

31. Defendants recklessly, wantonly, and/or negligently manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed and/or sold the problematic

drywall at issue in this litigation. For example, in October 2006, the Knauf Group investigated

its smelly drywall by sending the head of Research and Development, Hans-Ulrich Hummel, to

inspect several homes in Florida that were reporting complaints. Dr. Hummel provided the

findings of his report to several of the principals of the Knauf Group, specifically Isabel Knauf,

Baldwin Knauf, Nikolaus Knauf and Hans-Peter Ingenillem. Dr. Hummel concluded that Knauf

drywall was defective. Neither Dr. Hummel's report nor its conclusions were ever disclosed to

others in the Knauf Group, including the Vice President of Sales and Marketing of Knauf Asia

Pacific, the boss responsible for sales of Knauf's Chinese drywall to the United States, nor to any

of Knauf customers. The failure to disclose this report or its findings was wanton, wrongful,

worrisome and unethical.

    32.   Defendants recklessly, wantonly and/or negligently implemented faulty procedures

for purposes of formulating, preparing, testing, and otherwise ensuring the quality and/or

character of the problematic drywall at issue in this litigation.

    33. As a direct and proximate result of Defendants' problematic and unfit drywall and

the harmful effects of the sulfur compounds exiting these products, Plaintiffs and Class Members

have suffered, and continue to suffer economic harm and/or personal injury.

    34. As a direct and proximate result of Defendants' problematic and unfit drywall and

the harmful effects of the sulfur compounds exiting these products, the Plaintiffs and the Class

Members have suffered, and continue to suffer damages. These damages include, but are not

limited to, costs of inspection; costs and expenses necessary to remedy, replace and remove the

problematic drywall and other property that has been impacted; lost value or devaluation of their

homes, residences or structures and property as a direct result of damage caused to the property

and indirect damage resulting from perceived defects to the property, including stigma damages; loss of use and enjoyment of their home and property; and/or damages associated with personal injuries.

35. As a direct and proximate result of Defendants' problematic and unreasonably dangerous drywall and the harmful effects of the sulfur compounds that exit these products, Plaintiffs and the Class Members have been exposed to harmful sulfur compounds, suffered personal injury, have been placed at an increased risk of disease, and have need for injunctive relief in the form of repair and remediation of their home, recision of contracts, the ordering of emergency/corrective notice, the ordering of testing and monitoring, and/or the ordering of medical monitoring.

## CLASS ACTION ALLEGATIONS

### The Knauf Class

36. The representative Plaintiffs with claims against the Knauf manufacturing defendants assert a class pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and those similarly situated, against the Knauf manufacturing defendants for whom they have standing. The designated Plaintiffs in Exhibit "A" define their classes to be as follows:

> All owners and residents (past or present) of real property located in the United States containing problematic Chinese drywall manufactured, sold, distributed, and/or supplied by Knauf.

### The Distributor/Supplier/Importer/Exporter/Broker Subclasses

37. The representative Plaintiffs with claims against a distributor, supplier, importer, exporter, and/or broker identified in Exhibit "A" assert subclasses pursuant to Rules 23(a), (b)(1),

(b)(2), (b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves

and those similarly situated, against the distributors/suppliers/importers/exporters/brokers for

whom they have standing. The designated Plaintiffs in Exhibit "A" define their subclasses to be

as follows:

> All owners and residents (past or present) of real property located
> in the United States containing the Knauf problematic drywall that
> was sold, distributed, supplied, marketed, inspected, imported,
> exported, brokered, or delivered by each defendant identified in
> Exhibit "A".

**The Builder/Developer Subclasses**

38. The representative Plaintiffs with claims against a builder/developer, identified in

Exhibit "A" assert subclasses pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4) of the

Federal Rules of Civil Procedure, on behalf of themselves and those similarly situated, against

the builders/developers for whom they have standing. The designated Plaintiffs in Exhibit "A"

define their subclasses to be as follows:

> All owners and residents (past or present) of real property located
> in the United States containing the Manufacturing Defendants'
> problematic drywall and where each of the defendants identified in
> Exhibit "A" was the builder or developer of the property.

**The Contractor/Installer Subclasses**

39. The representative Plaintiffs with claims against a contractor/installer identified in

the Exhibit "A" assert subclasses pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4) of

the Federal Rules of Civil Procedure, on behalf of themselves and those similarly situated,

against the contractors/installers for whom they have standing. The designated Plaintiffs in

Exhibit "A" define their subclasses to be as follows:

14

All owners and residents (past or present) of real property located in the United States containing the Knauf Defendants' problematic drywall and where each of the defendants identified in Exhibit "A" was the contractor or installer of the drywall for the property.

**General Class Allegations and Exclusions from the Class Definitions**

40.  The following Persons shall be excluded from the Class and Subclasses: (1) Defendants and their subsidiaries, affiliates, officers and employees; (2) all Persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the judge(s) to whom this case is assigned and any immediate family members thereof.

41.  Upon information and belief, the problematic and unreasonably dangerous drywall in Plaintiffs' homes or other structures was installed in at least hundreds of homes, residences, or other structures owned by Plaintiffs and Class Members.  Therefore, the Classes and Subclasses are sufficiently numerous such that the joinder of all members of the Classes and Subclasses in a single action is impracticable.

42.  There are numerous common questions of law and fact that predominate over any questions affecting only individual members of the Classes and/or Subclasses.  Among these common questions of law and fact are the following:

    a.    whether Defendants' drywall products are problematic and/or unfit for their intended purpose;

    b.    whether Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold problematic drywall products;

    c.    whether Plaintiffs are entitled to recover compensatory, exemplary, incidental,

15

consequential, and/or other damages as a result of Defendants' unlawful and

tortious conduct; and

d.        whether Plaintiffs are entitled to recover injunctive and/or equitable relief as a

result of Defendants' unlawful and tortious conduct.

43.  The legal claims of named Plaintiffs are typical of the legal claims of other Class and

Subclass Members.  Additionally, for each of the subclasses that named Plaintiffs seek to

participate in, the legal claims of the named Plaintiffs are typical of the legal claims of other

Subclass Members.  Named Plaintiffs have the same legal interests and need for legal remedies

as other Class and/or Subclass Members.

44.  Named Plaintiffs are adequate representatives of the Class and Subclasses in which

they participate, together with their legal counsel, each will fairly and adequately protect the

interests of Class and Subclass Members.  Named Plaintiffs have no known conflict with the

Class or Subclasses and are committed to the vigorous prosecution of this action.

45.  The undersigned counsel are competent counsel experienced in class action litigation,

mass torts, and complex litigation involving harmful products.  Counsel will fairly and

adequately protect the interests of the Classes and/or Subclasses.

46.  The various claims asserted in this action are certifiable under the provisions of

Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against

individual Class and/or Subclass members would create a risk of inconsistent or varying

adjudications with respect to individual Class and Subclass members that would establish

incompatible standards of conduct for the party opposing the Class and Subclass; or

adjudications with respect to individual Class and Subclass members that, as a practical matter,

16

would be dispositive of the interests of the other Class and Subclass members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

47. The claims for injunctive relief in this case are certifiable under Fed. R. Civ. P. 23(b)(2). Defendants have acted or refused to act on grounds that apply generally to the Class and/or Subclass, so that final injunctive relief is appropriate respecting the Class and/or Subclass as a whole.

48. A class action is superior in this case to other methods of dispute resolution. The Class and Subclass members have an interest in class adjudication rather than individual adjudication because of their overlapping rights. It is highly desirable to concentrate the resolution of these claims in this single forum because it would be difficult and highly unlikely that the affected Class and Subclass Members would protect their rights on their own without this class action case. Management of the class will be efficient and far superior to the management of individual lawsuits. Accordingly, Plaintiffs' legal claims are properly certified pursuant to Rule 23(b)(3).

49. The issues particularly common to the Class and Subclass members' claims, some of which are identified above, are alternatively certifiable pursuant to Fed. R. Civ. P. 23(c)(4), as resolution of these issues would materially advance the litigation, and class resolution of these issues is superior to repeated litigation of these issues in separate trials.

## COUNT I
### NEGLIGENCE
#### (Against All Defendants)

50. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

51.  Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) installing, j) marketing, and/or k) selling this drywall, including a duty to adequately warn of their failure to do the same.

52.  Defendants knew or should have known that their wrongful acts and omissions would result in harm and damages in the manner set forth herein.

53.  Defendants breached their duty to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling this drywall.

54.  Defendants likewise breached their duties to Plaintiffs and Class Members by failing to warn about the problematic nature of the drywall.  Defendants, through the exercise of reasonable care, knew or should have known the nature of the problematic drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

55.  Defendants breached their duty to exercise reasonable care to timely remove and/or recall from the market and/or otherwise prevent the continued contact of Plaintiffs and Class Members with the drywall, upon leaning it had been sold in an unreasonably dangerous condition.

56.  Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs and Class Members.

57.  As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages and/or personal injuries as described herein.

18

**COUNT II**
**NEGLIGENCE PER SE**
**(Against All Defendants)**

58.  Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

59.  Defendants owed statutory duties to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, I) marketing, and/or j) selling this drywall.

60.  Defendants breached their statutory duties to the Plaintiffs and Class Members by failing to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, and/or j) selling this drywall.

61.  Defendants likewise breached their statutory duties, including but not limited to those imposed under the International Building Code ("IBC") and other State and local Building Codes, to Plaintiffs and Class Members by failing to warn about the problematic nature of the drywall.  For instance, it is specifically alleged that Defendants furnished the drywall in violation of ASTMC C 1396/C 1396M-069, and its predecessor(s).

62.  Defendants, through the exercise of reasonable care, knew or should have known the nature of the problematic drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

63.  Given the problematic nature of Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs and Class Members.

64.  As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages and/or personal injuries as described herein.

19

## COUNT III
## STRICT LIABILITY
### (All Defendants)

65. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

66. At all times relevant hereto, Defendants were in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

67. The drywall, including that installed in the homes of Class Members was placed by Defendants in the stream of commerce.

68. Defendants knew that the subject drywall would be used without inspection by consumers.

69. Defendants intended that the drywall reach the ultimate consumers, such as Class Members, and it indeed reached Class Members when it was installed in their homes.

70. When installed in Class Members' homes, the drywall was in substantially the same condition as it was in when Defendants manufactured, sold, and/or delivered it.

71. At all times relevant hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Defendants, and in accordance with the Defendants' directions and instructions.

72. The subject drywall was not misused or altered by any third parties.

73. The Defendants' drywall was improperly manufactured, designed, inspected, tested, marketed, distributed, and sold.

74. The design impropriety was in designing drywall that allows high levels of sulfur compounds to exit the drywall.

75. The manufacturing impropriety was in improperly selecting, testing, inspecting, mining,

making, assembling, and using, gypsum for drywall with levels of sulfur compounds that were too high and allow high levels of sulfur compounds to exit the drywall.

76.  The drywall was also problematic because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a unacceptable condition, as described above.

77.  The Defendants' negligence in manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use and to Class Members.

78.  The drywall is also problematic and unreasonably dangerous because Defendants failed to adequately warn and instruct Class Members of their negligent design, inspection, testing, manufacturing, marketing, and selling of the drywall.

79.  Class Members were unaware of the unreasonably dangerous propensities and problematic condition of the drywall, nor could Class Members, acting as reasonably prudent people discovery that Defendants' drywall was problematic, as set forth herein, or perceive its danger.

80.  Defendants' problematic drywall was much more dangerous and harmful than expected by the average consumer and by Class Members.

81.  Defendants' problematic drywall benefit to Class Members, if any, was greatly outweighed by the risk of harm and danger to them.

82.  The harmful and dangerous propensities of the drywall, as well as Defendants' failure to adequately warn Class Members of these propensities rendered the drywall unreasonably dangerous and was the direct and proximate cause of damages and/or personal injuries to Class Members.

21

## COUNT IV
## BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES
### (All Defendants)

83. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

84. Defendants and/or their agents were in privity with Plaintiffs and Class Members and/or Plaintiffs and Class Members were foreseeable third party beneficiaries of any warranty.

85. At the times Defendants utilized, supplied, inspected, and/or sold this drywall for use in structures owned by Plaintiffs and Class Members, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in structures owned by Plaintiffs and Class Members for use as a building material, and expressly or impliedly warranted the product to be fit for that use.

86. Defendants placed their drywall products into the stream of commerce in a problematic condition and these products were expected to, and did, reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

87. Although the drywall functions according to its intended purpose as a building component, it is unfit, problematic as alleged in Paragraph 28 and not merchantable for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

88. The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in structures owned by Plaintiffs and Class Members as a building material) due to the problems set forth herein.

89. Defendants had reasonable and adequate notice of the Plaintiffs' and the Class Members' claims for breach of warranty and failed to cure.

90. As a direct and proximate cause of Defendants' breach of warranties, Plaintiffs and Class Members have incurred harm and damages and/or personal injuries as described herein.

**COUNT V**

**BREACH OF THE IMPLIED WARRANTY OF FITNESS AND MERCHANTABILITY PURSUANT TO FLORIDA STATUTES SECTION 718.203**
**(On Behalf of Plaintiffs Who Own Condominiums in the State of Florida)**
**(Against Builders Only)**

91. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

92. Subclass Members who own condominiums in Florida, are owners of condominiums as that term is defined by Florida Statutes section 718.503.

93. Such Subclass Members, as owners, are entitled to the benefit of the statutory warranties of fitness and merchantability pursuant to Florida Statutes section 718.203.

94. Each of the builders who are subject to this claim are developers, as defined by Florida Statutes section 718.203(16), as they created condominiums or offered condominiums for sale in the ordinary course of business.

95. Pursuant to Florida Statutes section 718.203(1)(a-e), each of the builders who are subject to this claim is deemed to have granted Subclass Members, who own condominiums in Florida, an implied warranty of fitness and merchantability for the purposes or uses as follows:

> a. As to each unit, a warranty for 3 years commencing with the completion of the building containing the unit.
>
> b. As to the personal property that is transferred with, or appurtenant to, each unit, a warranty which is for the same period as that provided by the manufacturer of the personal property, commencing with the date of closing of the purchase or the date of possession of the unit, whichever is earlier.

23

c. As to all other improvements for the use of unit owners, a 3 year warranty commencing with the date of completion of the improvements.

d. As to all other personal property for the use of unit owners, a warranty which shall be the same as that provided by the manufacturer of the personal property.

e. As to the roof and structural components of a building or other improvements and as to mechanical, electrical, and plumbing elements serving improvements or a building, except mechanical elements serving only one unit, a warranty for a period beginning with the completion of construction of each building or improvement and continuing for 3 years thereafter or 1 year after owners other than the developer obtain control of the association, whichever occurs last, but in no event more than 5 years.

96. At all times relevant hereto, routine maintenance was performed by Subclass Members and/or the builders who are subject to this claim or by an association controlled by such builders.

97. At the times the builders who are subject to this claim installed, utilized, supplied, inspected, and/or sold drywall for use in the Subclass Members' homes, the builders knew, or it was reasonably foreseeable, that the drywall would be installed in the Subclass Members' homes for use as a building material, and warrantied the product be fit and merchantable for that use.

98. Defendants' drywall product was placed into the stream of commerce by the builders who are subject to this claim in a problematic condition and was expected to, and did, reach users, handlers, and persons coming into contact with said product without substantial change in the condition in which it was sold.

99. Although the drywall functions according to its intended purpose as a building component, it is unfit, problematic as alleged in paragraph 28 and not merchantable for this purpose

24

due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

100. The builders who are subject to this claim breached the implied warranty of merchantability and fitness because the drywall was not fit to be installed in Subclass Members' homes as a building material due to the defects set forth herein.

101. The builders who are subject to this claim had reasonable and adequate notice of the Subclass Members' claims for breach of implied warranty of fitness and merchantability and failed to cure.

102. As a direct and proximate cause of the builders' breach of the warranties under Florida Statutes section 718.203, Subclass Members have incurred harm and damages and/or personal injuries as described herein.

**COUNT VI**
**BREACH OF THE IMPLIED WARRANTY OF HABITABILITY**
**(Against Builders Only)**

103. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

104. The Builder Defendants were in direct contractual privity with their Subclass Members.

105. The drywall that the Builder Defendants installed in the homes of Subclass Members was placed into the stream of commerce by the Builder Defendants in a problematic condition and was expected to, and did, reach users, handlers, and persons coming into contact with said drywall product without substantial change in the condition in which it was sold.

106. Certain Subclass Members bought their homes containing problematic drywall based upon the judgment of the Builder Defendants.

107. The Builder Defendants breached the implied warranty of habitability because the problematic drywall causes Subclass Members homes not be meet ordinary, normal standards reasonably to be expected of living quarters of comparable kind and quality due to the defects set forth herein.

108. The Builder Defendants had reasonable and adequate notice of the claims of the Subclass Members for breach of implied warranty of habitability and failed to cure.

109. As a direct and proximate cause of the Builder Defendants' breach of the implied warranty of habitability, Plaintiffs and Subclass Members have incurred harm and damages and/or personal injuries as described herein.

## COUNT VII
## BREACH OF CONTRACT
### (Against Builders Only)

110. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

111. As part of the agreements to purchase real properties from the Builder Defendants, for which Subclass Members paid valuable consideration, the Builder Defendants contracted with Subclass Members to construct homes that would be free of defects.

112. The Builder Defendants materially breached their contracts by providing Subclass Members with homes containing the problematic drywall; to wit, sulfur compounds exit the drywall and cause harm and damage as described herein.

113. As a direct and proximate cause of the Builder Defendants' breach of contract, Plaintiffs and Subclass Members have incurred harm and damages as described herein.

## COUNT VIII
## VIOLATION OF THE LOUISIANA NEW HOME WARRANTY ACT
### (on Behalf of Plaintiffs Who Own Homes in the State of Louisiana)
### (Against Louisiana Builders Only)

114.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

115.   The Louisiana New Home Warranty Act provides protection to owners of homes against builders in connection with the construction of the homes.

116.   For each applicable subclass, every subclass plaintiff is an "owner," as that term is defined by LSA-R.S. 9:3143(3), who is asserting a claim under the New Home Warranty Act against their "builder," as that term is defined by LSA-R.S. 9:3143(1).

117.   Implicit in every Builder Defendant's building contract is the requirement that the work to be completed be performed in a workmanlike manner that is free from defects in material and workmanship.

118.   Each of the Builders who are subject to this claim violated their duties to Plaintiffs and Class Members since the drywall they used is harmful and problematic for the reasons set forth above.

119.   Given the problematic nature of the drywall, the Builders knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs and Class Members.

120.  As a direct and proximate cause of the Builders' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages and/or personal injuries as described herein.

27

## COUNT IX
## REDHIBITION
### (By Louisiana Plaintiffs Against All Defendants)

121. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

122. The drywall manufactured, distributed and/or sold by Defendants was not reasonably fit for its ordinary and intended purpose as alleged in paragraph 28 above.

123. Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable in the premises, in accordance with La. Civ. Code art. 2524.

124. In addition, or in the alternative, the drywall manufactured, distributed and/or sold by Defendants contained redhibitory defects, in that, at the time of delivery, the propensity to allow sulfur compounds to exit the drywall renders the drywall so useless and/or inconvenient that it must be presumed that Plaintiffs would not have purchased the drywall had they known of the redhibitory defect or defects.

125. In the alternative, the defects are redhibitory defects in that, while not rendering the drywall totally useless, diminish the drywall's use and/or value to such an extent that it must be presumed that the buyer would have bought it, but for a lesser price.

126. The Manufacturing Defendants are conclusively presumed to know of the defects in the drywall manufactured by them.

127. In addition, it is believed and alleged that All Defendants knew of the defects in the drywall at the time the drywall was delivered and/or sold.

128. Defendants have had numerous opportunities to repair and/or replace the drywall and associated fixtures and/or building components and have failed to do so; in addition, and/or in the alternative, such requests have been, would have been and/or would be futile; Manufacturing

28

Defendants and/or Distributor Defendants are, moreover, deemed to be placed on notice when notice is provided to Builder Defendants (and/or Distributor Defendants); and All Defendants, in addition, or alternatively, had actual knowledge of the problems in the drywall and the need for replacement, remediation and/or repair.

129.   All Defendants are therefore liable to all Louisiana Plaintiffs for a return of the purchase price, (with interest from the time it was paid), reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the drywall and associated items, for damages, and for reasonable attorneys' fees, in accordance with La. Civ. Code art. 2545.

130.  In the alternative, to the extent that any Distributor Defendant and/or Builder Defendant did not know of the defects in the drywall at the time of delivery and/or sale, those defendants are liable to Louisiana Plaintiffs to repair, remedy or correct the defect; and/or, if unable to do so, for a return of the purchase price, (with interest from the time it was paid), reimbursement of the reasonable expenses occasioned by the sale, and those expenses incurred for the preservation of the drywall and associated items, in accordance with La. Civ. Code art. 2531.

**COUNT X**
**LOUISIANA PRODUCTS LIABILITY ACT**
**(Manufacturing Defendants)**
**(Pleaded in the Alternative Against Distributor Defendants)**

131.  Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

132.  In addition to any and all damages, attorneys fees and other remedies made available to Louisiana Plaintiffs under the warranty of fitness and/or warranty against redhibitory defects, the Manufacturing Defendants are liable to Louisiana Plaintiffs under the Louisiana Products Liability Act, ("LPLA"), La. R.S. 9:2800.51, *et seq.*

133. The LPLA is also pleaded in the alternative with respect to any Distributor Defendant who might be considered a "manufacturer" under La. R.S. 9:2800.53(1)(a) (labels or otherwise holds the drywall out as his own), 9:2800.53(1)(b) (exercises control over or influences a characteristic of the drywall causing damage), 9:2800.53(1)(c) (the manufacturer of a product which contains the drywall as a component part), and/or 9:2800.53(1)(d) (a seller of a product of an alien manufacturer where the seller is in the business of importing or distributing the drywall for resale and is the *alter ego* of the alien manufacturer).

134. The Manufacturing Defendants, upon information and belief, expressly warranted that the drywall they manufactured and sold was guaranteed to be free from defects in materials and workmanship.

135. The Manufacturing Defendants, upon information and belief, expressly warranted that the drywall was manufactured in accordance with ASTM C36.

136. The drywall at issue is, in all cases, unreasonably dangerous by virtue of the unreasonable emission of sulfur compounds which do not in any way contribute to or enhance the utility of the drywall, yet pose a risk to the wiring, plumbing, appliances, personal property, overall economic value of the property and financial security of the owner, and/or the health of the residents of the property.

137. At all times pertinent and material hereto, there existed alternative feasible manufacturing processes and/or designs of drywall which perform all of the functions and utility of traditional drywall, without allowing unreasonable levels of sulfur compounds to exit the drywall.

138. At all times pertinent and material hereto, Manufacturing Defendants (and/or Distributer Defendants who may be considered "manufacturers" under the LPLA) knew that their

drywall was unreasonably dangerous and/or problematic as set forth herein.

139. In the alternative, Manufacturing Defendants (and/or Distributer Defendants who may be considered "manufacturers" under the LPLA) should have, at all times pertinent and material hereto, known of the unreasonably dangerous and/or problematic characteristics and/or conditions, had they reasonably employed then-existing scientific and/or technical knowledge, reasonable testing, and/or other reasonable and then-accepted methods of quality assurance and/or quality control.

140. Defendants' drywall is unreasonably dangerous in composition or construction in that, at the time it left Defendant's control, it deviated in a material way from Defendant's own specifications or performance standards.

141. In addition, and in the alternative, Defendants' drywall is unreasonably dangerous in design, in that, at the time the drywall left Defendant's control, there existed an alternative design for the product that was capable of preventing Plaintiffs' damage, and the likelihood of causing the plaintiffs' damage and the gravity of that harm outweighed the burden (if any) on the Defendant in adopting such alternative design and the adverse effect (if any) on the utility of the drywall.

142. In addition, and in the alternative, Defendants' drywall is unreasonably dangerous in that it fails to conform to an express warranty about the product which induced the use of the product and caused damage to Plaintiffs to the extent that the warranty was untrue.

143. In addition, and in the alternative, Defendants' drywall is unreasonably dangerous due to an inadequate warning, in that, at the time the drywall left Defendant's control, the drywall possessed a characteristic that might cause damage and yet Defendant failed to use reasonable care to provide an adequate warning of such characteristics and/or dangers to users and/or handlers of the drywall.

144. Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable in the

premises.

## COUNT XI
### PRIVATE NUISANCE
### (All Defendants)

145. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

146. The Defendants' tortious or wrongful acts or omissions have caused sulfur compounds and/or other chemical leaching into structures owned by Plaintiffs and Class Members which has unreasonably interfered, and continues to interfere, with the Plaintiffs' and Class Members' use and enjoyment of their properties and caused them harm and damage as discussed herein.

147. Defendants' interference has impaired the rights of Plaintiffs' and Class Members' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

148. Defendants' invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless.

149. The interference with Plaintiffs' and Class Members' use of their property caused by Defendants is substantial and is ongoing.

150. Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs' and Class Members' damages, injuries, harm, loss, and increased risk of harm, which they suffered and will continue to suffer.

151. As a direct and proximate cause of Defendants' creation of a private nuisance, Plaintiffs and Class Members have incurred harm and damages and/or personal injuries as described herein.

## COUNT XII
### UNJUST ENRICHMENT
### (All Defendants)

152. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

32

153.  Defendants received money as a result of Plaintiffs' and Class Members' purchases of Defendants' problematic drywall, or purchases of structures containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members.

154.  Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiffs and the Class Members.

155.  Defendants, by the deliberate and tortious conduct complained of herein, have been unjustly enriched in a manner which warrants restitution.

### COUNT XIII
### VIOLATION OF CONSUMER PROTECTION ACTS
### (All Defendants)

156.  Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

157.  This is an action for relief under the various Consumer Protection Acts of the jurisdictions in which affected properties are present, including but not limited to, L.SA-R.S. 51:1401, *et seq.* (Louisiana Unfair Trade Practices and Consumer Protection Law); Ala. Code 1975 § 8-19-1, *et seq.* (Alabama Deceptive Trade Practices Act); G.S. § 75-1.1, *et seq.* (North Carolina Consumer Protection Act); F.S. § 501.201, *et seq.* (Florida Deceptive and Unfair Trade Practices Act); Va. Code. Ann. § 59.1-196, *et seq.* (Virginia Consumer Protection Act); Tex. Bus. Com. Code Ann. § 17.41, *et seq.* (Texas Deceptive Trade Practices-Consumer Protection Act); Miss. Code Ann. § 75-24-1, *et seq.* (Mississippi Consumer Protection Act).

158.  The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including but not limited to, the knowing misrepresentation or

failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of problematic drywall constitute violation of the provisions of the Consumer Protection Acts of the Relevant States.

159.  Plaintiffs and Class Members have suffered actual damages as a result of Defendants' violation of these Consumer Protection Acts and are entitled to relief.

160.  As a direct and proximate cause of Defendants' violations of the Consumer Protection Acts of the Relevant States, Plaintiffs and Class Members have incurred harm and damages as described herein.

**COUNT XIV**
**EQUITABLE AND INJUNCTIVE RELIEF AND MEDICAL MONITORING**
**(All Defendants)**

161.  Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

162.  Plaintiffs and the Class Members are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

163.  Plaintiffs and the Class Members will suffer irreparable harm if the Court does not render the injunctive relief and medical monitoring relief set forth herein, and if defendants are not ordered to recall, buy back, rescind, and/or repair the structures owned by Plaintiffs and Class Members.

164.  Plaintiffs, on behalf of themselves and all others similarly situated, demand injunctive and equitable relief and further, that defendants be ordered to: (1)  to buy back or rescind the contracts for Plaintiffs' and Class Members' homes or other structures, or  in the alternative, remediate, repair and/or replace the drywall in such structures upon proof by the defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the Class and the

general public that the drywall is not problematic and/or unreasonably dangerous as alleged herein; (3) institute, at their own cost, a public awareness campaign to alert the Class and general public of the harm and dangers associated with the drywall; and (4) create, fund, and support a medical monitoring program.

165. Until Defendants' problematic drywall has been removed and remediated, Defendants must provide continued air monitoring in the structures owned by Plaintiffs and Class Members.

166. Plaintiffs and Class Members have been exposed to greater than normal levels of sulfur compounds as a result of exposures to Defendants' problematic and unfit drywall and have suffered personal injuries as a result.

167. The sulfur compounds which exit from the Defendants' drywall and to which Plaintiffs and Class Members have been exposed are proven unreasonably dangerous.

168. Plaintiffs' and Class Members' exposures were caused by the Defendants' negligent or otherwise tortious conduct.

169. Plaintiffs' and Class Members' exposure may lead to serious health problems, diseases, and medical conditions that may be prevented by timely medical diagnosis and treatment.

170. The method and means for diagnosing the Plaintiffs' and Class Members' potential medical problems are well accepted in the medical and scientific community and will be of great benefit to the Plaintiffs and Class Members by preventing or minimizing health problems that they may encounter as a result of the problematic and unfit drywall.

171. As a proximate result of their exposure to sulfide and other noxious compounds from Defendants' problematic and unfit drywall, Plaintiffs and Class Members have developed a significantly increased risk of contracting a serious latent disease.

35

172. Monitoring procedures exist that make the early detection of any latent disease possible that are different from those normally recommended in the absence of the exposure.

173. The prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the Class and Subclass Members, hereby demand a trial by jury as to all issues so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situated demand upon Defendants jointly and severally for:

      a.    an order certifying the case as a class action;

      b.    an order certifying the Class and each of the Subclasses;

      c.    an order appointing Plaintiffs as the Class Representatives of the Class;

      d.    an order appointing undersigned counsel and their firms as counsel for the Class;

      e.    compensatory and statutory damages;

      f.    punitive damages as allowed by law;

      g.    pre and post-judgment interest as allowed by law;

      h.    injunctive relief;

      I.    an award of attorneys' fees as allowed by law;

      j.    an award of taxable costs; and

      k.    any and all such further relief as this Court deems just and proper.

Respectfully submitted,

Dated: 9/20/2011

_____
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin
Fred S. Longer
Matthew C. Gaughan
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

37

Robert C. Josefsberg
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
 Matthews, Martinez, Gonzales,
 Kalbac & Kane
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W
Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
rlewis@hausfeldllp.com

Jeremy W. Alters
Alters Law Firm, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@alterslaw.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

## COUNSEL FOR INDIVIDUAL PLAINTIFFS ARE SET FORTH ON EXHIBIT "A"[2]

---

[2]Attached hereto as Exhibit "C" is the contact information for each plaintiff's counsel and pro se plaintiff.